1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMUNDO VICENTE RUBIO, | Case No.  1:21-cv-00286-SAB |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
| v. | |
| CITY OF VISALIA, et al., | (ECF Nos. 66, 67, 68, 72, 74, 75) |
| Defendants. | **DEADLINE: 7 DAYS** |

Currently before the Court is Defendants' motion for judgment on the pleadings.  Based on the moving, opposition, and reply papers, the operative complaint, the Court's record, and the information presented by counsel at the hearing held on February 14, 2024, the Court issues the following order granting in part and denying in part Defendants' motion for judgment on the pleadings.

**I.**

**BACKGROUND**

On March 1, 2021, Plaintiff Raymundo Vicente Rubio ("Plaintiff") initiated this action against the City of Visalia ("City"), Visalia Police Department Chief Jason Salazar, and Visalia Police Department Officers Marisa Burkdoll and William Hansen (collectively, "Defendants"). (Compl., ECF No. 1.)  Plaintiff asserts three federal causes of action under § 1983 against all defendants: (1) a claim of unreasonable search and seizure for Plaintiff's detention and arrest in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution; (2) a claim for use of excessive force in violation of the Fourth and Fourteenth Amendments to the U.S.

Constitution; and (3) a <u>Monell</u> claim of municipal liability in connection with the alleged constitutional violations.[1]  (<u>Id.</u> at 10–13.)  Plaintiff also asserts the following six state law claims against all defendants: (1) false arrest and imprisonment; (2) assault and battery; (3) negligence; (4) violation of the Bane Act, California Civil Code § 52.1; (5) intentional infliction of emotional distress; and (6) negligent infliction of emotional distress.  (<u>Id.</u> at 13–23.)  On December 28, 2022, all parties consented to the jurisdiction of the United States Magistrate Judge and the matter was reassigned to the undersigned for all purposes.  (ECF Nos. 39, 40, 41.)

On December 29, 2023, Defendants filed the instant motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).  (Defs.' Mot. J. Pleadings ("Mot."), ECF Nos. 66, 67.)  Defendants also filed a request for judicial notice.  (Defs.' Req. Jud. Not. ("DRJN"), ECF No. 68.)   On January 19, 2024, Plaintiff filed his opposition with a supporting declaration.  (ECF No. 72 ("Opp'n").)   On February 5, 2024, Defendants filed a reply.  (ECF No. 74 ("Reply").)  On February 7, 2024, Defendants filed a supplemental request for judicial notice.  (Defs.' Supp. Req. Jud. Not. ("Supp. RJN"), ECF No. 75.)

The Court held a hearing in this matter on February 14, 2024.  (ECF No. 76.)  James DeSimone and Jenica Leonard appeared via video on behalf of Plaintiff.  Leonard Herr and Caren Curtiss appeared via video on behalf of Defendants.  (<u>Id.</u>)  The Court took the matter under submission.

## II.

## ALLEGATIONS IN THE COMPLAINT

### A.    Allegations of the Operative Complaint

On January 22, 2020, Plaintiff was walking in the parking lot of a shopping center approximately 400 feet from his home.  (Compl. ¶¶ 29-31.)   Officer Burkdoll approached Plaintiff at the edge of the parking lot in her police vehicle.  (<u>Id.</u> ¶ 32.)  Officer Burkdoll engaged with Plaintiff and instructed him to take his hands out of his pockets.  (<u>Id.</u> ¶ 33.)   Officer Burkdoll told Plaintiff that people were calling about him and asked him what was going on.  (<u>Id.</u>

---

[1] <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658 (1978).

¶ 34.)  Plaintiff asked Officer Burkdoll what he did, and she informed him that people claimed Plaintiff was looking into vehicles, which Plaintiff denied.  (Id.)  Plaintiff told Officer Burkdoll that he believed his race and ethnicity were the real cause for the stop.  (Id. ¶ 35.)

Officer Hansen and his K-9 unit then arrived.  (Id. ¶ 37.)  Officer Burkdoll asked Plaintiff to remove the backpack he was wearing, to which Plaintiff asked why and what he was doing to elicit the request.  (Id. ¶ 38.)  Officer Burkdoll approached Plaintiff and grabbed his right arm while Officer Hansen grabbed Plaintiff from his left side.  (Id. ¶ 39.)  Plaintiff again asked what he did.  (Id. ¶ 40.)  As he was attempting to remove his backpack, Plaintiff was grabbed by Officer Burkdoll as she placed her arm around his neck.  (Id. ¶ 41.)  Officer Hansen repeatedly threatened to let his canine out and bite Plaintiff, but allegedly gave Plaintiff no specific commands of what to do to avoid being bitten.  (Id.)

Officer Burkdoll then grabbed Plaintiff's neck and slammed him to the ground as Officer Hansen pulled on the hood of Plaintiff's sweatshirt.  (Id. ¶ 42.)  Officer Burkdoll, while on top of Plaintiff, struck him six times on his head with her flashlight and fist, while he pleaded for help.  (Id. ¶ 43.)  Officer Burkdoll ordered Plaintiff to give the officers his hand, which Plaintiff attempted to do.  (Id.)  Officer Hansen then retrieved the canine from his vehicle and commanded the canine to bite Plaintiff.  (Id. ¶ 44.)  The canine bit Plaintiff on his lower back for approximately one minute and forty seconds while Plaintiff lay prone on the ground pleading for help and yelling.  (Id.)  During this time, Officer Burkdoll struck Plaintiff on the back of the head with her flashlight and directed Plaintiff to put his left hand behind his back.  (Id. ¶¶ 45-46.)  Plaintiff was eventually handcuffed.  (Id. ¶ 48.)

Within his individual causes of action, Plaintiff alleges he was "detained without reasonable suspicion and arrested without probable cause."  (Id. ¶ 60.)  Plaintiff alleges the Officers engaged in excessive force when they hit and punched him in the head, twisted his wrists, applied excessive force to his neck, used the canine, handcuffed him, and slammed him to the ground "without any justification."  (Id. ¶ 68.)  Plaintiff also alleges he "did not resist arrest, did nothing threatening, and posed no risk" to the Officers.  (Id. ¶ 70.)  Plaintiff again alleges within his Monell claim that he "was not resisting."  (Id. ¶¶ 77, 78.)  In his six-state law causes

1  of action, Plaintiff alleges the Officers "had no legal justification for their actions."  (Id. ¶ 98.)

2      **B.      Criminal Case in State Court**

3      On January 23, 2020, the Tulare County District Attorney's Office filed two felony

4  counts—one for each Officer—against Plaintiff for resisting arrest in violation of California

5  Penal Code § 69 in Tulare County Superior Court ("State Court") case number VCM391740.

6  (DRJN, Ex. B at 21.)[2]  Plaintiff was also charged with three drug-related misdemeanors.  (Id.)

7      On July 27, 2020, an amended criminal complaint was filed in State Court combining the

8  original two felony counts for resisting into one misdemeanor count of resisting arrest in

9  violation of Penal Code § 69.  (DRJN, Ex. C at 25.)  Both Officer Burkdoll and Officer Hansen

10  were named in the singular count.  (Id.)

11      On October 26, 2023, Plaintiff entered a plea of no contest to Penal Code § 69 and Health

12  & Safety Code § 11377(a) for possession of methamphetamine, both misdemeanors.  (DRJN, Ex.

13  D at 40.)  Plaintiff simultaneously entered pleas of no contest for unrelated felony and

14  misdemeanor charges stemming from a separate incident.  (Id. at 38-40.)  Plaintiff's plea was

15  entered after the State Court confirmed Plaintiff had been advised by his legal counsel of his

16  rights, defenses, and consequences of his plea.  (Id. at 36-37.)  During the plea colloquy, the

17  State Court judge asked whether Plaintiff's criminal defense attorney and the prosecutor agreed

18  to "stipulate that there is a factual basis for the plea based upon reports on file with the Court,"

19  and both answered in the affirmative.  (Id. at 37-38.)  The State Court docket reflects that one

20  "Police/Incident Report" was filed with the criminal complaint on January 23, 2020.  (Supp.

21  RJN, Ex. H at 4.)  A Visalia Police Department Report for Incident 20-006164 authored by

22  Officer Burkdoll and supplemented by Officer Hansen, describes the following pertinent facts.

23      Officer Burkdoll approached Plaintiff following calls he was looking into vehicles in the

24  parking lot.  (DRJN, Ex. A at 8.)  After speaking with him, Officer Burkdoll suspected Plaintiff

25  was under the influence of a controlled substance.  (Id.)  When Officer Hansen arrived on scene,

26  Officer Burkdoll asked Plaintiff to take off his backpack so she could conduct a pat down for

27  

28  
[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1    weapons.  (<u>Id.</u>)  Plaintiff responded by becoming more agitated, began to back away, and ask

2    why.  (<u>Id.</u>)  Officer Burkdoll then grabbed Plaintiff's right wrist and Plaintiff tensed up, backed

3    up, and pulled away.  (<u>Id.</u>)  Officer Hansen grabbed Plaintiff's left side and warned him to stop,

4    or he would be bitten by the police canine.  (<u>Id.</u> at 8, 10.)  The Officers took Plaintiff to the

5    ground and Plaintiff continued to resist.  (<u>Id.</u>)  Officer Burkdoll struck Plaintiff two to three times

6    on his face to gain Plaintiff's compliance by disorienting him.  (<u>Id.</u>)

7         As Plaintiff continued to resist, Officer Hansen deployed his canine.  (<u>Id.</u> at 8.)  Officer

8    Hansen attempted to deploy the canine to Plaintiff's legs to assist in holding Plaintiff in place so

9    the Officers could detain him; however, due to Plaintiff's level of resistance, the canine bit

10   Plaintiff's lower back.  (<u>Id.</u> at 11.)  The canine lost his grip and was redirected.  (<u>Id.</u>)

11        While being bitten, Plaintiff continued to resist and kept his right hand underneath his

12   torso.  (<u>Id.</u> at 8.)  Officer Burkdoll struck Plaintiff in the head two to three times with her fists

13   and instructed Plaintiff to give them his hands.  (<u>Id.</u>)  Plaintiff did not comply, so Officer

14   Burkdoll struck him with her flashlight two to three times in his head and face.  (<u>Id.</u> at 8-9.)

15   Shortly after the strikes with the flashlight, Officer Burkdoll was able to get Plaintiff's arms

16   secured.  (<u>Id.</u> at 9.)  Officer Hansen states that once the canine was fully engaged and latched

17   onto Plaintiff, the Officers began to get Plaintiff's immediate compliance.  (<u>Id.</u> at 11.)  When

18   Plaintiff was secured, Officer Hansen commanded the canine to release Plaintiff.  (<u>Id.</u>)

19                                              **III.**

20                                    **LEGAL STANDARD**

21        "After the pleadings are closed—but early enough not to delay trial—a party may move for

22   judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate

23   when the moving party clearly establishes on the face of the pleadings that no material issue of

24   fact remains to be resolved and that it is entitled to judgment as a matter of law.  <u>Hal Roach</u>

25   <u>Studios, Inc., v. Richard Feiner and Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989); <u>Fajardo v.</u>

26   <u>Cty. of Los Angeles</u>, 179 F.3d 698, 699 (9th Cir. 1999); <u>accord</u> <u>Chavez v. United States</u>, 683

27   F.3d 1102, 1108 (9th Cir. 2012).  In deciding a motion for judgment on the pleadings, the court

28   accepts as true all allegations in the complaint and treats as false those allegations in the answer

that contradict the complaint.  Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 (9th Cir. 2004); Hal Roach Studios, Inc., 896 F.2d at 1550.  The court construes all material allegations in the light most favorable to the non-moving party.  Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1046 (9th Cir. 2006).

**IV.**

**DISCUSSION**

In their motion for judgment on the pleadings, Defendants contend they are entitled to dismissal of the entire action with prejudice for two reasons.  First, Plaintiff's federal causes of action are barred by Heck v. Humphrey, 512 U.S. 477 (1994) because Plaintiff pleaded no contest to resisting a peace officer in violation of Penal Code § 69 and success in his § 1983 claims would therefore necessarily imply the invalidity of Plaintiff's conviction.  Second, Plaintiff's six state law causes of action are barred for failure to satisfy the pre-litigation claims requirements set forth in the California Government Claims Act.

Plaintiff argues Heck does not bar his federal claims because his State Court record of conviction is devoid of any facts.  Further, Plaintiff challenges the sufficiency of the State Court criminal charging documents and the failure to meet elements sufficient to support a conviction under Penal Code § 69.  Plaintiff also argues his state law causes of action were timely filed with the City, given the sixty-day extension of time afforded by Executive Order N-35-20.

**A.     Requests for Judicial Notice**

1.     Defendants' Requests for Judicial Notice

Defendants request that the Court take judicial notice of: (1) a copy of the Visalia Police Department Incident Report No. 20-006164; (2) a copy of the felony criminal complaint filed in Tulare County Superior Court Case No. VCF391740 on January 23, 2020; (3) a copy of a first amended misdemeanor complaint filed in Tulare County Superior Court Case No. VCF391740 on July 27, 2020; (4) a certified copy of the transcript from Plaintiff's change of plea hearing on October 26, 2023 in which Plaintiff entered his pleas of no contest in Tulare County Superior Court Case Nos. VCF420750 and VCM391740; (5) Plaintiff's notice of motion and motion for relief from the government claims filing requirements pursuant to government code § 946.6 filed

in this Court on March 3, 2021; (6) Defendant City's June 22, 2021 opposition to Plaintiff's motion for relief from the government claims filing requirement; (7) the July 19, 2021 order denying Plaintiff's motion for relief from the government claims filing requirement; and (8) a copy of the Tulare County Superior Court Public Electronic Docket Case Detail Page in Tulare County Superior Court Case No. VCM391740.  (DRJN, Exs. A-G; Supp. RJN, Ex. H.)  Plaintiff does not oppose Defendants' requests for judicial notice.

As a general rule, a district court ordinarily considers only the complaint and documents attached thereto in deciding a motion for judgment on the pleadings; however, the court may also take judicial notice of matters of public record and consider them without converting a Rule 12(c) motion into one for summary judgment. Fed. R. Civ. P. 12(d); Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001).  The court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Here, the Court takes judicial notice of the police report because, as discussed below, the report formed the stipulated factual basis for Plaintiff's plea of a no contest and was a document filed in the State Court criminal action.[3]  The Court also grants judicial notice of the copies of the original felony complaint, amended misdemeanor complaint, certified transcript of Plaintiff's October 26, 2023 change of plea hearing, and the State Court docket because they are public court records not subject to reasonable dispute.  See Sanders v. City of Pittsburg, No. 18-CV-04326-SK, 2019 WL 11542388, at *1 (N.D. Cal. Sept. 26, 2019), aff'd, 14 F.4th 968 (9th Cir.

_____

[3] The Court disagrees with Defendant that Plaintiff also incorporated the police report by reference in the complaint by merely alleging "[a]ccording to the police reports from Officer Burkdoll and Officer Hansen, the interaction between the officers and Mr. Rubio occurred on or about January 22, 2020 at or around 8:08 PM." (Compl. ¶ 29). "A defendant may seek to incorporate a document into the complaint 'if the plaintiff refers *extensively* to the document or the document forms the basis of the plaintiff's claim.' " Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018) (quoting United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003)).  "For 'extensively' to mean anything…it should, ordinarily at least, mean more than once."  Id. Thus, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document."  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Here, Plaintiff only mentioned the police report once in his complaint.  (See Compl. ¶ 29.)  Additionally, the police report does not form the basis of Plaintiff's claim.  To the contrary, Plaintiff disputes the facts contained police report through his civil action.  (Opp'n 6 ("Defendants then submitted a misleading police report requesting criminal charges against Plaintiff").)  Because Plaintiff only mentions the police report once to provide facts not in dispute, the Court does not find the report was incorporated by reference.

1  2021) (granting judicial notice of court records from the state court criminal proceeding against

2  the plaintiff, including a complaint and plea hearing transcript); Arellano v. Haskins, No. 1:17-

3  CV-01235 NONE JLT, 2021 WL 1193814, at *6 (E.D. Cal. Mar. 30, 2021) (taking judicial

4  notice of a copy of the state court docket and certified copy of the transcript from the plaintiff's

5  state court change of plea hearing).   The Court also takes judicial notice of the motions filed in

6  this Court and order issued by Judge Drozd regarding Plaintiff's motion for relief.   See Gerritsen

7  v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1034 (C.D. Cal. Jan. 30, 2015) ("It is well

8  established that a court may take judicial notice of its own files and records ...")

9           2.      Plaintiff's Counsel's Declaration

10          Plaintiff does not request judicial notice; rather, Plaintiff attaches a declaration by his

11  counsel asserting that six exhibits cited in the opposition are true and correct copies.

12  (Declaration of V. James. DeSimone in Support of Pl.'s Opp'n. ("DeSimone Decl."), ECF No.

13  72-1.)  The Court liberally construes this declaration as a request for judicial notice.

14          The first and second proffered exhibits are copies of Officer Burkdoll and Officer

15  Hansen's body worn camera footage, which Plaintiff "invites the Court to view as they are the

16  most objective and factually accurate evidence of the arrest of Plaintiff."   (Opp'n 7 n.1.)

17  Defendants object to Plaintiff's proffer, given the body worn camera footage is not part of the

18  State Court record of conviction.   (Reply 6.)   The Court declines to take judicial notice of the

19  footage as it is not appropriate to do so.   The body worn camera footage is not attached to

20  Plaintiff's complaint and Plaintiff makes no argument that the footage forms the basis of the

21  complaint such that it is incorporated by reference.   See Sanz v. City of Vallejo, No. 2:19-CV-

22  02134-TLN-DB, 2021 WL 2682162, at *4 (E.D. Cal. June 30, 2021) (declining to incorporate by

23  reference body worn footage because the plaintiff does not refer to the video footage extensively

24  in the complaint and the video footage did not form the basis of the plaintiff's claims).   Lee v.

25  City of San Diego, No. 18cv0159 W (BLM), 2019 WL 117775, at *4–5 (S.D. Cal. Jan. 7, 2019)

26  (declining to consider police body camera footage on a Rule 12(c) motion under the

27  incorporation-by-reference doctrine where the plaintiff's complaint did not refer to videos and

28  plaintiff's claims were not based on the videos).   Further, Plaintiff does not identify particular

1  facts within the footage as the reason for his request. Rather, Plaintiff requests that the Court

2  take judicial notice of the footage in its entirety as "accurate *evidence*" that shows Officer

3  Burkdoll and Officer Hansen employed excess force. The Court cannot consider evidence

4  outside the pleadings with no argument it is otherwise judicially noticeable without converting

5  the instant motion into one for summary judgment. Fed. R. Civ. P. 12(d); see Knickerbocker v.

6  U.S. Dep't of Interior, No. 1:16-cv-01811-DAD-JLT, 2018 WL 836307, at *6 (E.D. Cal. Feb. 13,

7  2018) (denying request for judicial notice of body-worn camera footage "to purportedly show

8  that the defendant rangers did not employ excessive force" because "[t]his obviously is disputed

9  by plaintiff, and is far beyond the usual purposes of judicial notice"). Accordingly, the Court

10  does not take judicial notice of the Officers' body worn camera footage.

11      Plaintiff also refers to and attaches a copy of the electronic docket for "hearings" in

12  Tulare County Superior Court Case No. VCF420750. (DeSimone Decl., Ex. 3 at 2.) However,

13  the Court notes case number VCF420750 is Plaintiff's unrelated November 2021 criminal case.

14  While the docket is a public court record subject to judicial notice, the Court does not find the

15  docket for hearings in a case unrelated to the underlying criminal conviction to be relevant in the

16  instant motion. Accordingly, the Court does not take judicial notice of Plaintiff's third exhibit.

17      Plaintiff also proffers a copy of Executive Order N-35-20, issued by Governor Newsom

18  on March 21, 2020 under the state of emergency in response to the COVID-19 pandemic. (Id.,

19  Ex. 4.) The Court shall take judicial notice of the executive order because its accuracy can easily

20  be confirmed, and executive orders are matters of public record. See Lee, 250 F.3d at 689.

21      Finally, Plaintiff proffers two exhibits containing emails between counsel for Plaintiff

22  and counsel for Defendants. (DeSimone Decl., Exs. 5-6.) Plaintiff proffers they were submitted

23  for purposes encompassed by the State Bar of California's rule for candor toward the tribunal.

24  (Opp'n 12 n.2, 16 n.3.) The communications between counsel are not attached to the complaint,

25  incorporated therein, nor are they matters of public record. The Court therefore does not take

26  judicial notice of Plaintiff's fifth or sixth exhibits.

27      **B.    Whether Plaintiff's Section 1983 Claims Are Barred by Heck.**

28      A section 1983 claim against a law enforcement officer or agency is barred if success in

1   the civil action would "necessarily imply the invalidity of [the plaintiff's] conviction or sentence;

2   if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the

3   conviction or sentence has already been invalidated." Heck, 512 U.S. at 487.  In turn, "if the

4   plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding

5   criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence

6   of some other bar to the suit." Id.  "When faced with a Heck bar issue, the Court should

7   determine (1) the elements of the underlying conviction, (2) the factual record supporting the

8   criminal conviction, and (3) whether the section 1983 action would invalidate the conviction

9   considering the factual record supporting the conviction." Bivins v. Sarabia, No. 2:18-CV-2671

10   JAM DMC P, 2021 WL 5827097, at *9 (Dec. 8, 2021), report and recommendation adopted,

11   2022 WL 801104 (E.D. Cal. Mar. 16, 2022).

12          1.      The Underlying Conviction

13          The underlying conviction for purposes of the Heck analysis is Plaintiff's plea of no

14   contest to the charge of violating Penal Code § 69, which provides that "[e]very person who

15   attempts, by means of any threat or violence, to deter or prevent an executive officer from

16   performing any duty imposed upon the officer by law, or who knowingly resists, by the use of

17   force or violence, the officer, in the performance of his or her duty" is guilty of violation of the

18   statute.  "In California, the lawfulness of the officer's conduct is an essential element of the

19   offense of resisting, delaying, or obstructing a peace officer." Smith v. City of Hemet, 394 F.3d

20   689, 695 (9th Cir. 2005); see People v. Cruz, 44 Cal. 4th 636, 673 (2008) ("[I]t is a well-

21   established rule that when a statute makes it a crime to commit any act against a peace officer

22   engaged in the performance of his or her duties, part of the corpus delicti of the offense is that

23   the officer was acting lawfully at the time the offense was committed") (quotations omitted).

24          Officer Burkdoll and Officer Hansen are both named as victims in the Penal Code § 69

25   charge upon which Plaintiff pleaded no contest.  (DRJN, Ex. C at 25.)  Notably, under California

26   law, a plea of no contest is "considered the same as a plea of guilty and that, upon a plea of *nolo*

27   *contendere*, the court shall find the defendant guilty." Arellano, 2021 WL 1193814, at *7 n.1

28   (citing Cal. Pen. Code § 1016(3)); see Nuno v. County of San Bernardino, 58 F.Supp.2d 1127,

1135 (C.D. Cal. July 28, 1999) ("[F]or purposes of the *Heck* analysis, a plea of *nolo contendere* in a California criminal action has the same effect as a guilty plea or jury verdict of guilty").

The Court briefly turns to one of Plaintiff's arguments in his opposition, which unsubtly challenges the validity of his conviction.  Plaintiff argues that "nowhere in Burkdoll nor Hansen's narratives do they describe being threatened with violence, resisted by use of force or violence—all legal requirements necessary to prove a violation of Penal Code § 69." (Opp'n 8.) Plaintiff also argues that "reviewing the charging documents reveal[s] that Penal Code § 69…is insufficiently pled in the complaint…" and that Plaintiff's criminal case contained "a procedurally deficient charging document." (Id. at 15.)  Such argument in a civil tort action is precisely what Heck bars.  512 U.S. at 486 ("[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments"); Sanders, 14 F.4th at 971 ("By preventing collateral attacks on convictions by way of civil actions, the Heck bar furthers the principles of finality and consistency").  Neither party disputes that Plaintiff was convicted for violation of Penal Code § 69.  Plaintiff does not offer any argument that his conviction has been invalidated.  Rather, Plaintiff admits in his opposition that he pleaded no contest to Penal Code § 69 as charged and details the significant benefits he obtained by accepting the plea.  (See Opp'n 9.)  Whether the charging document in State Court was procedurally deficient or insufficiently pleaded is not the proper inquiry before this Court.  See Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) ("[Plaintiff] may challenge the validity of his arrest, prosecution and conviction only by writ of habeas corpus").  The Court proceeds with the uncontroverted fact that Plaintiff was convicted of Penal Code § 69 in order to determine the relevant question of whether success in Plaintiff's § 1983 claims would necessarily imply the invalidity of his conviction.

2.      The Factual Record

The bulk of the parties' dispute in the instant motion is whether an underlying factual basis for Plaintiff's plea of no contest to Penal Code § 69 exists.  Defendants argue the Tulare Police Department report that contains narratives by Officers Burkdoll and Hansen forms the factual basis of Plaintiff's conviction.  Defendants point to the certified transcript of the change of plea colloquy for Plaintiff's criminal cases, wherein Plaintiff's criminal defense attorney and

the prosecutor agreed to "stipulate that there is a factual basis for the plea based upon reports on file with the Court." (DRJN, Ex. D at 37-38.)  The State Court transcript does not specify what reports or what type of reports were on file with the Court.  However, Defendants proffer the State Court docket for criminal case number VCM391740, which reflects that only one report— the "Police/Incident Report"—was filed with the State Court.  (Supp. RJN, Ex. H at 4.)

Plaintiff argues that because the State Court judge only referenced "reports" when asking whether the parties stipulated to a factual basis, neither the parties nor this Court can know exactly which "reports" the State Court was referencing.  (Opp'n 10.)  Plaintiff therefore avers there is *no* factual basis as to which officer's actions were purportedly deemed "lawful" by Plaintiff's conviction and at what point during the incident the factual basis was formed to support the conviction of Penal Code § 69.   (Id.)

The Court, however, does not find the State Court's reference to "reports on file with the Court" to be as vague as Plaintiff suggests.  There is only one "report" that is "on file with the Court" on the State Court docket, and it is specifically titled "police/incident *report*."  (Supp. RJN, Ex. H.)  The Court notes the Tulare County Police Report is dated January 22, 2020, and contains a supplement signed by Officer Hansen on January 23, 2020.  (DRJN, Ex. A at 6-12.) The Tulare Police Department report therefore does not postdate the police/incident report that was filed in State Court on January 23, 2020.  Further, *both* Officer Burkdoll and Officer Hansen—each a named victim in the charge for Penal Code § 69—provided narratives of the events that occurred that evening.  The Court thus reaches the reasonable conclusion that the Tulare Police Department Report was the "report on file with the [State] Court" at the time of Plaintiff's change of plea hearing.

The Court now turns to whether and to what limitation the factual basis contained within the police report can be considered when applying Heck to Plaintiff's section § 1983 claims. Plaintiff argues that because this Court cannot know which acts within the report the State Court relied upon in accepting Plaintiff's no contest plea, there is no record of what acts formed the basis of the conviction.  Plaintiff directs the Court to the Ninth Circuit's recent decision in Lemos v. County of Sonoma, 40 F.4th 1002 (9th Cir. 2022) which determined a plaintiff's §

1983 claims were not <u>Heck</u>-barred despite a conviction for resisting.  In <u>Lemos</u>, a criminal jury was instructed that a conviction for resisting could be based on any one of four acts of resistance that occurred during the course of the plaintiff's interaction with an officer.  (<u>Id.</u> at 1007.)  Three of those acts occurred during the initial interaction with the officer, but the fourth act occurred "some five minutes later" and in a different location.  (<u>Id.</u>)  Because all four acts were bundled in one jury instruction and the jury returned a general verdict without providing which act formed the basis of their guilty verdict, the <u>Lemos</u> Court held it could not determine which act the jury thought constituted resisting a police officer.  (<u>Id.</u>)  Thus, when the plaintiff made a § 1983 claim against the officer based solely on the fourth act, the Ninth Circuit held <u>Heck</u> did not bar the claim because success in the criminal case did not "necessarily" invalidate the conviction, given the unknown possibility that the jury based its guilty verdict on one of the three other acts.  (<u>Id.</u>)

Unlike the issue presented by the all-in-one jury instruction in <u>Lemos</u>, the State Court judge here did not specify during Plaintiff's plea colloquy that only one or some of the acts detailed in the police report were sufficient for her to accept the plea.  Rather, she accepted the parties' stipulation that the reports in the State Court's file, without specific limitation, formed the factual basis for Plaintiff's plea for resisting.  The Court is therefore not persuaded by Plaintiff's argument that <u>Lemos</u> involves "a more factually probative procedural situation."[4] (Opp'n 10.)  However, the Court also cannot agree with Defendants that <u>Lemos</u>' applicability to this case is "tenuous at best."  (Mot. 7.)  While <u>Lemos</u> grappled with, among other things, how to determine which acts formed the basis for a jury conviction, <u>Lemos</u> ultimately applied the "same approach" to a jury conviction as that applied when the conviction is based on a guilty plea: "we look at the record [of the criminal case] to see which acts formed the basis for the plea."  (<u>Id.</u> at 1006.)  <u>Lemos</u> thus requires that this Court look to the State Court's record to determine which acts formed the basis of Plaintiff's plea.

---

[4] The other cases cited by Plaintiff are similarly distinguishable.  (Opp'n 14 (citing <u>Sanford v. Motts</u>, 258 F.3d 1117, 1119 (9th Cir. 2001) ("nothing in the record informs us *what* the factual basis was for Sanford's guilty plea [for resisting]"); <u>Smith</u>, 394 F.3d at 698-99 ("[n]either party in its briefs or at oral argument was able to identify the facts underlying the plea or advise us regarding what transpired at the time Smith entered his plea," and ultimately holding that "[b]ecause we are unable to determine 'the factual basis for [Smith's] plea,' his lawsuit does *not* necessarily imply the invalidity of his conviction and is therefore not barred by <u>Heck</u>")).)

1    Defendants argue the Ninth Circuit's decision in <u>Sanders v. City of Pittsburg</u>, 14 F.4th

2  968 (9th Cir. 2021) is more applicable to the instant matter.  The Court agrees.  There, the

3  plaintiff pleaded no contest to a resisting charge and stipulated that the factual basis for his plea

4  was "based on the preliminary hearing transcript," which identified three instances of resistance:

5  (1) fleeing in a vehicle; (2) fleeing on foot; and (3) physically resisting officers when attempting

6  to arrest him.  <u>Id.</u> at 970, 972.  Given the plaintiff's stipulation without limitation for the factual

7  basis when entering his plea, the Court determined it could not "separate out which of Sanders's

8  obstructive acts led to his conviction since all of them did."  <u>Id.</u> at 972.  Thus, when the plaintiff

9  made a § 1983 excessive force claim for the use of a canine, the Court looked to the preliminary

10  hearing transcript which contained testimony from an officer who said he ordered his canine to

11  bite the plaintiff when he observed other officers struggling on the ground to apprehend the

12  plaintiff's arms.  <u>Id.</u>  The Court determined "the dog bite [was] unquestionably part of the actions

13  that formed the basis of Sanders' conviction.  Under these facts, there is no way to carve out the

14  dog bite from the [resisting conviction] without 'necessarily imply[ing]' the conviction was

15  invalid."  <u>Id.</u> (citing <u>Heck</u>, 512 U.S. at 487.)  Because plaintiff stipulated to every fact within

16  each of the three instances of resistance, the Court held it could not "slice up the factual basis of

17  a [resisting] conviction to avoid the <u>Heck</u> bar."  <u>Id.</u>

18    However, unlike <u>Sanders</u> where the plaintiff stipulated to all facts within only three

19  instances of resistance, Plaintiff here stipulated broadly that "reports on file with the Court"

20  serve as the factual basis of Plaintiff's conviction.  The Court notes <u>Briseno v. City of W.</u>

21  <u>Covina</u>, which was recently affirmed by the Ninth Circuit in an unpublished opinion, is similarly

22  based on a plaintiff's wholesale stipulation to an unknown report.  <u>Briseno</u>, No. CV 20-2986

23  MRW, 2021 WL 6690564 (C.D. Cal. Dec. 23, 2021), <u>aff'd</u>, No. 22-55100, 2023 WL 2400833

24  (9th Cir. Mar. 8, 2023).  There, Briseno pleaded no contest to a charge of resisting arrest.  <u>Id.</u> at

25  *1.  During his plea colloquy, Briseno's attorney and the prosecutor agreed to "stipulate to a

26  factual basis based upon the police report."  <u>Id.</u>  The district court noted that the transcript failed

27  to specifically identify which police report formed the factual basis for the plea.  <u>Id.</u>  However,

28  the defendants produced several reports during discovery and submitted them to the court in

1   support of their motion for summary judgment.  Id.  The district court noted two reports detailed

2   a foot chase, Briseno's refusal to comply with commands, an officer taking Briseno to the

3   ground, officers striking Briseno with a baton, kneeing Briseno in the ribs while on the ground,

4   and the officers' eventual success in grabbing Briseno's hands and securing them in handcuffs.

5   Id. at *1-2.  The district court found Heck barred Briseno's § 1983 claim for excessive force.

6   The court, noting factual similarities with Sanders, found that "the factual basis for the criminal

7   plea established that Plaintiff violated [the resisting charge] at numerous points during the chase

8   and the arrest during which he resisted and obstructed the police."  Id. at *4.  The district court

9   found that Briseno's "acknowledgement of his guilt necessarily meant that the police use of force

10  through to the end of his resistance was lawful."  Id. (citing Sanders, 14 F.4th at 971.)  When

11  finding the factual basis supporting Plaintiff's criminal conviction operates to bar his later § 1983

12  claim under Heck, the district court concluded that "[t]he wholesale importation of the police

13  reports into Plaintiff's guilty plea proceedings dooms this civil rights action."  Id. at *6.

14      A court in this district has recently found—and this Court agrees—that by affirming

15  Briseno, the Ninth Circuit implicitly approved of the district court's treatment of the factual

16  record and, critically, the source of the factual record.  King v. Villegas, No. 1:17-CV-00676 JLT

17  EPG (PC), 2023 WL 4627687, at *7 (E.D. Cal. July 19, 2023) (finding it appropriate, given

18  Briseno, to consider a "probable cause statement and the reports in discovery" in applying Heck

19  to a motion for judgment on the pleadings because the state criminal court considered both when

20  taking the plaintiff's no contest plea to violating Penal Code § 69).  Accordingly, the Court finds

21  Plaintiff's stipulation to the factual basis within the Tulare Police Department report can be

22  considered when applying Heck to Plaintiff's section § 1983 claims in the instant civil action.

23      The record in Plaintiff's criminal case reflects that the parties stipulated—and the State

24  Court accepted—that the police report formed the factual basis of Plaintiff's no contest plea.

25  Critically, Plaintiff did not limit his stipulation to only certain portions of the reports on file in

26  the State Court; rather, Plaintiff agreed to the acts contained within Officer Burkdoll and Officer

27  Hansen's narratives relevant to pleading no contest to the resisting and possession charges.

28  Thus, for purposes of its Heck analysis, the Court finds all acts "through to the end of

[Plaintiff's] resistance" contained within the police report formed the basis of the plea to resisting.  See Briseno, 2021 WL 6690564, at *4.  Officer Burkdoll and Officer Hansen detailed various facts supporting resistance by Plaintiff—including physically backing away, pulling away, refusing to give the Officers his hands or place them behind his back, "flail[ing] about," refusing to get on his stomach, placing his right hand under his torso, "attempt[ing] to raise and roll out of [Officer Hansen's] holds—that led to the use of force by the Officers—including grabbing Plaintiff, "taking him to the ground," striking him in the head, using the canine, and handcuffing Plaintiff—within which Plaintiff stipulated to as a factual basis for his no contest plea.  (DRJN, Ex. A 8-11.)

Accordingly, the Court finds the factual basis that supports Plaintiff's conviction is found within the reports on file with the State Court, including the police report authored by Officer Burkdoll and supplemented by Officer Hansen.  (DRJN, Ex. A at 6-12.)  Because the State Court considered the contents of the Tulare Police Department report as the factual basis when accepting Plaintiff's plea, the Court finds it appropriate to consider the report in applying Heck.

3.    Invalidation of Conviction

The final issue for Heck purposes is whether Plaintiff's section 1983 claims would necessarily invalidate his conviction.  See Smith, 394 F.3d at 695 ("[T]he relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence under [a resisting arrest statute]") (citing Heck, 512 U.S. at 487).   The application of Heck "is a highly fact-dependent injury that turns on the precise factual basis for the conviction."  Correa v. Braudrick, No. 1:19-CV-00369-DAD-BAK (GSA) (PC), 2022 WL 2308803, at *7 (E.D. Cal. June 27, 2022), report and recommendation adopted, No. 1:19-CV-00369-ADA-CDB (PC), 2022 WL 7096437 (E.D. Cal. Oct. 12, 2022). The Court addresses each of Plaintiff's three section 1983 causes of action in turn.

a.    **Unreasonable Search and Seizure – Detention and Arrest**

Plaintiff's first cause of action alleges Officer Burkdoll and Officer Hansen detained him without reasonable suspicion and arrested him without probable cause in violation of his right against unreasonable searches and seizures.  (Compl. ¶ 60.)  By alleging the Officers were acting

unlawfully when he was arrested, Plaintiff directly contests the validity of his arrest.  Such a claim, however, is barred by Heck because an element of Penal Code § 69 is that the Officers were acting lawfully in pursuing and carrying out Plaintiff's arrest. Webb v. City & Cnty. of San Francisco, No. C 11-00476 CRB, 2011 WL 6151605, at *7 (N.D. Cal. Dec. 12, 2011); Smithart, 79 F.3d at 952 ("There is no question that Heck bars [Plaintiff's]'s claims that defendants lacked probable cause to arrest him").  If Defendants' arrest of Plaintiff was unlawful, it would necessarily imply the invalidity of Plaintiff's conviction.  Heck, 512 U.S. at 487.  As Plaintiff has not met his burden of proving his conviction has been invalidated, Plaintiff's first cause of action is clearly barred by Heck.  Accordingly, Defendants' motion for judgment on the pleadings is granted as to Plaintiff's first cause of action.

### b.    Unreasonable Search and Seizure - Excessive Force

Plaintiff's second cause of action alleges Officer Burkdoll and Officer Hansen engaged in excessive force by "attacking [*sic*], hitting him in the head with a blunt object, punching him, twisting his wrists, excessive force to his neck [*sic*], use of K-9 dog attack to maul him [*sic*], handcuffing and slamming [*sic*] to the ground without any justification…." (Compl. ¶ 68).  Further, Plaintiff specifically alleges he "did not resist arrest, did nothing threatening, and posed no risk to Officer Burkdoll and Officer Hansen."  (Id. ¶ 70.)  Defendants argue Plaintiff's excessive force claim is Heck-barred because the allegations in this case contradict the facts referred to in Plaintiff's no contest plea to violating Penal Code § 69.  (See generally Mot.)

"[A]n officer who uses excessive force is acting unlawfully and therefore is not engaged in the performance of his or her duties."  Lemos, 40 F.4th at 1006.  To avoid Heck from barring an excessive force claim, "a plaintiff must not imply an officer acted unlawfully during the events that form the basis of a resisting arrest conviction…." Sanders, 14 F.4th at 970 (citing Smith, 394 F.3d at 695). "[E]xcessive force used after a defendant has been arrested may properly be the subject of a § 1983 action notwithstanding the defendant's conviction on a charge of resisting an arrest that was itself lawfully conducted."  (Id. at 969.)  A section 1983 cause of action does not run afoul of Heck when the excessive force claim and the resisting conviction "are based on different actions during one continuous transaction."  Hooper v. County of San

1   Diego, 629 F.3d 1127, 1134 (9th Cir. 2011).

2       Plaintiff's primary contention in his complaint is that he never resisted arrest.  This is

3   fundamentally inconsistent with his plea of no contest to resisting arrest in violation of Penal

4   Code § 69.  The Court thus finds that Plaintiff's excessive force claim is barred to the extent it

5   alleges Plaintiff "did not resist arrest, did nothing threatening, and posed no risk to Officer

6   Burkdoll and Officer Hansen," or that Officer Burkdoll and Officer Hansen were "without any

7   justification" to respond with reasonable force to Plaintiff's stipulated resistance.  Yount v. City

8   of Sacramento, 43 Cal. 4th 885, 898 (2008) (determining that "to the extent that [Plaintiff's]'s

9   section 1983 claim alleges that he offered no resistance," the claim was Heck-barred).

10      However, in Plaintiff's opposition to Defendants' motion, Plaintiff appears to have

11  retreated from his allegations that he offered zero resistance and did nothing threatening.

12  Instead, Plaintiff argues post-conviction that "the facts and evidence in this case show that the

13  Defendant Officers used excessive force well beyond the brief moment in time that Plaintiff

14  could [sic] said to be engaging in any threatening conduct" and that Plaintiff "can articulate facts

15  relating to post-detention assault by law enforcement." (Opp'n 7, 12.)  At the hearing, counsel

16  for Plaintiff clarified the particular facts are contained within the police report.  Specifically,

17  Officer Hansen's narrative states in pertinent part:

18          Once my K9 was fully engaged and latched on to the suspect, we
            began to get *immediate compliance* out of the suspect based on my
19          K9's deployment. The suspect was screaming, "get the dog off of
            me," and "God, please help me." After the suspect was secured, he
20          had to be double cuffed due to his layers of clothing and his
            backpack. My K9 was given the command to release the suspect,
21          at which time he did, and he was taken back to my patrol car.

22  (DRJN, Ex. A at 11 (emphasis added).)  In Officer Burkdoll's narrative, she describes:

23          *While being bitten*, Rubio continued to pull away and kept putting
            his right hand underneath his torso. I struck Rubio again 2-3 times
24          on the head and face as I told him repeatedly to give officers his
            hands. Rubio did not comply so I then struck him with my
25          flashlight 2-3 times attempting to hit his shoulder. Due to Rubio
            pulling away and flailing, the flashlight strikes hit him in the
26          head/face. Shortly after the strikes with the flashlight, I was able to
            get Rubio's right arm secured and placed it into a handcuff and
27          finally the left arm as well.

28  (Id. at 8-9 (emphasis added).)

1    In evaluating this motion for judgment on the pleadings, the Court also turns to Plaintiff's

2 complaint.  Plaintiff alleges that while he lay on his stomach with his "arms out surrendering":

3    Hansen led [the dog] to Mr. Rubio's lower back, repeatedly
     commanded the dog to bite, and encouraged the dog as it *bit into*
4    *Rubio's flesh continuously for approximately one minute and forty*
     *seconds* while Mr. Rubio lay prone face down on the ground
5    screaming in pain throughout the attack and asking what he had done.

6    Officer Hansen continued to order the dog to bite Mr. Rubio while
     Officer Burkdoll was on top of Mr. Rubio and continued to strike him
7    on the back of the head with her flashlight.

8 (Compl. ¶¶ 44-45 (emphasis added).)

9    The Court agrees with Defendants that the Ninth Circuit prohibits district courts from

10 "slic[ing] up the *factual basis* of a [resisting] conviction to avoid the <u>Heck</u> bar." <u>Sanders</u>, 14

11 F.4th at 972 (emphasis in original).  For that reason, as described above, the Court does not carve

12 out any force taken by the Officers through to the end of Plaintiff's resistance.  Critically,

13 however, the <u>Heck</u>-bar only applies to the facts required for Plaintiff's conviction of Penal Code

14 § 69.  Plaintiff's wholesale importation of the police report as the factual basis for his conviction

15 for resisting arrest does not bar him from alleging unlawful force *after* he stopped resisting.  <u>Id.</u>

16 at 971 ("[I]f the alleged excessive force occurred *before* or *after* the acts that form the basis of

17 the [resisting arrest] violation, even if part of one continuous transaction, the § 1983 claim

18 doesn't necessarily imply the invalidity of [a] criminal conviction [for resisting]") (internal

19 quotations and citations omitted) (emphasis in original).  Rather, in entering a plea of no contest

20 for resisting based upon the facts contained within the police report, Plaintiff only stipulated that

21 the Officers' use of force through to the end of his resistance was lawful.  <u>See</u> <u>Briseno</u>, 2021 WL

22 6690564, at *4 (citing <u>Sanders</u>, 14 F.4th at 971).   Uniquely here, the factual basis within the

23 police report delineates a potential moment that Plaintiff stopped resisting: "Once [Officer

24 Hansen's] canine became fully engaged and latched on to [Plaintiff], [the Officers] *began to get*

25 *immediate compliance* out of [Plaintiff]."  (DRJN, Ex. A at 11 (emphasis added).)  The Officers'

26 alleged excessive force *after* that point, even if still part of one continuous transaction, would not

27 necessarily imply the invalidity of Plaintiff's conviction.  <u>See</u> <u>Hooper</u>, 629 F.3d at 1134.  Given

28 the procedural posture of this case and the limited judicially noticed information before the

1 Court, the Court cannot determine as a matter of law when Plaintiff's resistance stopped and

2 where excessive force, if any, began.

3      In short, Plaintiff stipulated to the police report as the factual basis for his resisting

4 conviction. A criminal defendant "cannot stipulate to the lawfulness" of the Officers' conduct

5 "as part of his [resisting arrest] guilty plea and then use the 'very same act' to allege an excessive

6 force claim under § 1983." Sanders, 14 F.4th at 972 (quoting Smith, 394 F.3d at 699 n.5). Thus,

7 every act that occurred after Plaintiff began resisting the Officers and prior to when Plaintiff

8 began complying immediately after the canine became "fully engaged and latched" is Heck-

9 barred. This includes the Officers grabbing Plaintiff, taking him to the ground, Officer Burkdoll

10 hitting him on the head with her fists, the canine's first attempted bite, and the canine's bite

11 when it became "fully engaged and latched," and until the alleged moment the Officers received

12 Plaintiff's compliance, which, according to Officer Hansen, occurred "immediate[ly]" after the

13 canine was latched. Success on any actions taken by Officer Hansen and Officer Burkdoll until

14 the end of Plaintiff's resistance would necessarily imply Plaintiff's conviction for resisting arrest

15 is invalid, and therefore is Heck-barred.

16      However, actions taken by the Officers *after* they allegedly received "compliance out of"

17 Plaintiff would not necessarily imply the invalidity of Plaintiff's conviction for resisting. This is

18 because Plaintiff's conviction under Penal Code § 69 in State Court could not have been based

19 on events that occurred *after* the time Plaintiff stopped resisting. See Sanders, 14 F.4th at 972.

20 The unique procedural posture of this case requires that this Court construe the allegations that

21 do not contradict the stipulated factual basis in the light most favorable to Plaintiff. Plaintiff's

22 complaint alleges—and the police report does not contradict—that the canine continuously bit or

23 remained "latched" on Plaintiff for an unknown duration less than one minute and forty seconds

24 *after* Plaintiff's purported compliance. (Compl. ¶ 44; DRJN, Ex. A at 11.) Success on a § 1983

25 claim for the Officers' application of force *after* Plaintiff stopped resisting would not necessarily

26 imply the invalidity of Plaintiff's conviction for resisting arrest, and therefore is not Heck-barred.

27      The Court finds, as a matter of law, that Plaintiff's excessive force claim is Heck-barred

28 for all acts through to the end of his resistance as provided in the stipulated factual basis

1  contained within the police report.  However, the Court cannot find as a matter of law that

2  actions by the Officers after the point they received Plaintiff's immediate compliance would

3  invalidate Plaintiff's conviction for resisting arrest.  Accordingly, the Court grants Defendants'

4  motion for judgment on the pleadings for the Officers' stipulated lawful acts after Plaintiff began

5  resisting arrest and prior to Plaintiff's compliance.  The Court denies Defendants' motion as to

6  the alleged excessive force used by the Officers after Plaintiff stopped resisting.[5]

7         **c.**     **Third Cause of Action for <u>Monell</u> Claims**

8        Plaintiff's third cause of action is for <u>Monell</u> liability for various alleged unconstitutional

9  policies, customs, and practices against the City of Visalia, Visalia Police Department Chief

10  Jason Salazar, Doe supervisors, Officer Burkdoll, and Officer Hansen.   (Compl. ¶ 79.)

11  Defendants briefly argue Plaintiff's third cause of action should be dismissed as a matter of law

12  because Plaintiff fails to establish an underlying constitutional violation by the Officers.  (Mot.

13  18.)  Defendants aver a civil judgment in favor of Plaintiff's <u>Monell</u> claim would be predicated

14  on a determination that the Officers violated the Fourth Amendment in effectuating the arrest of

15  Plaintiff, which would undermine the Officers' lawful actions established by Plaintiff's

16  conviction of Penal Code § 69.  (<u>Id.</u> at 19.)[6]

17        A local government unit may not be held responsible on a § 1983 claim for the acts of its

18  employees under a *respondeat superior* theory of liability.   <u>Monell v. Department of Social</u>

19  <u>Services</u>, 436 U.S. 658, 691 (1978).  Rather, municipal entity may only be held liable if it inflicts

20  the injury complained of through a policy or custom.  <u>Waggy v. Spokane County Washington</u>,

21  594 F.3d 707, 713 (9th Cir. 2010).  Generally, to state a <u>Monell</u> claim and establish municipal

22  liability, the plaintiff must show (1) he possessed a constitutional right which was violated; (2)

23  the municipality had a policy; (3) the policy was deliberately indifferent to plaintiff's

24  constitutional right; and (4) the policy was "the moving force" behind the constitutional

---

25  [5] Given this is a motion for judgment on the pleadings that is serving as Defendants' dispositive motion, the jury will

26  have to be instructed what conduct by the Officers has already been determined to be lawful by way of Plaintiff's stipulation of the factual basis when entering his no contest plea to violation of Penal Code § 69.

27  [6] Plaintiff failed to oppose Defendants' motion for judgment on the pleadings regarding the <u>Monell</u> liability issue. However, the Court has an independent duty to assess Plaintiff's complaint irrespective of a Plaintiff's failure to address his <u>Monell</u> claim.  Further, Defendants' only basis for requesting dismissal of Plaintiff's <u>Monell</u> claim is that

28  it is predicated on the same <u>Heck</u>-barred constitutional claims which Plaintiff addressed in his opposition.

1   violation.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400 (1997); Burke

2   v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of Washoe, Nev.,

3   290 F.3d 1175, 1185-86 (9th Cir. 2002).

4        Plaintiff's third cause of action alleges a theory of Monell liability against Defendants for

5   unlawful detention and arrest.   (See Compl. ¶ 79(e)-(h) (alleging Defendants knowingly

6   maintained, enforced, and applied unconstitutional customs, policies, and practices of "unlawful

7   detention" and "detaining and arresting individuals without probable cause or reasonable

8   suspicion…").)  In entering a plea of no contest to violation of Penal Code § 69, Plaintiff pleaded

9   the Officers acted lawfully in pursuing Plaintiff's detainment and arrest.  See Webb, 2011 WL

10  6151605, at *7; Smithart, 79 F.3d at 952. Plaintiff therefore fails to show a constitutional right

11  was violated in his detention and arrest.   Accordingly, Plaintiff's Monell claim against all

12  Defendants for customs, policies, or practices of "unlawful detention" or "detaining and arresting

13  individuals without probable cause or reasonable suspicion" is Heck-barred.[7]

14       Plaintiff also alleges excessive force serves as a basis for Monell liability against

15  Defendants.  Defendants argue Plaintiff cannot bring a Monell claim against the City predicated

16  upon the Officers' alleged use of excessive force because the claim is Heck-barred.  (Mot. 19.)

17  The Court agrees to the extent Plaintiff generally alleges customs, policies, and practices of the

18  "use of force." (Compl. ¶ 79(d)-(g).)  By entering a plea of no contest to violation of Penal Code

19  § 69, Plaintiff pleaded that the Officers' use of force was lawful through to the end of his

20  resistance.  However, as previously discussed, the Court cannot determine as a matter of law

21  based solely on the pleadings and limited judicially noticed information at what point the

22  Officers' lawful use of force allegedly ended and where excessive force, if any, began.

23  Illustratively, Plaintiff's Monell theory that Defendants failed to adequately train officers

24  regarding constitutional procedures and practices for use of force through until the end of

25  resistance is Heck-barred; however, training officers regarding use of force after receiving

---

26  [7] The Court notes Plaintiff also briefly alleges an unconstitutional custom and practice of "failing to timely obtain
27  medical care." (Compl. ¶ 79(h).)  However, Plaintiff does not allege a section 1983 cause of action premised on a
constitutional violation for inadequate medical care.  Accordingly, the Court only analyzes Plaintiff's Monell claims
28  relevant to the alleged constitutional violations of unreasonable search and seizure claimed in his first and second
causes of action.

immediate compliance would not be <u>Heck</u>-barred as a matter of law in the instant action.  (<u>Id.</u> ¶ 79(d).)  Plaintiff's <u>Monell</u> cause of action further alleges customs, policies, and practices regarding "use of excessive force" and specifically that Defendants have and maintain an unconstitutional custom and practice of "using excessive force through the vicious and gratuitous utilization of police dogs…."  (<u>Id.</u> ¶ 79(a)-(b), (h).)  Viewing the allegations in the light most favorable to Plaintiff as is required in the context of a motion for judgment on the pleadings, <u>Heck</u> bars Plaintiff from asserting a constitutional claim for the custom and practice of the Officers' initial use of the canine; however, <u>Heck</u> does not bar, for example, an alleged custom and practice of a continuing bite after an individual allegedly stopped resisting.

The Court finds Plaintiff has alleged viable claims for excessive force, if such force occurred, after the Officers "began to get immediate compliance out of [Plaintiff]."  (DRJN, Ex. A at 11.) Therefore, *only* that claim for alleged excessive force may serve as the basis for <u>Monell</u> liability against Defendants.  Given the instant motion is a motion for judgment on the pleadings and Defendants only challenge Plaintiff's <u>Monell</u> claim the basis that the underlying constitutional violations are <u>Heck</u>-barred, the Court's <u>Monell</u> inquiry ends.

Accordingly, the Court denies Defendants' motion in part because Plaintiff has sufficiently alleged a constitutional violation for the Officers' actions *after* Plaintiff purportedly stopped resisting.  However, the Court grants Defendants' motion to the extent Plaintiff's third cause of action for <u>Monell</u> liability is predicated on (1) the Officers' lawful detainment and arrest of Plaintiff or (2) the Officers' lawful use of force through to the end of his resistance, both of which are <u>Heck</u>-barred.

### C.      Whether Plaintiff's State Law Claims Are Time-Barred

Defendant argues Plaintiff's six state law causes of action are barred as a matter of law for failure to satisfy pre-litigation claims requirements.  The Government Claims Act (Cal. Gov. Code. § 810 et seq.) requires that a Plaintiff comply with certain conditions prior to filing a lawsuit against a public entity for money or damages. "[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement.  Otherwise, his complaint is subject to a [motion to dismiss] for failure to state facts sufficient to constitute a

1   cause of action." State of California v. Superior Ct., 32 Cal. 4th 1234, 1243 (2004). "The filing

2   of a claim is a condition precedent to the maintenance of any cause of action against the public

3   entity and is therefore an *element* that a plaintiff is required to prove in order to prevail."

4   DiCampli-Mintz v. County of Santa Clara, 55 Cal. 4th 983, 990 (2012) (emphasis in original).

5       A plaintiff must present to the public entity his claim "for injury to person…not later than

6   six months after the accrual of the cause of action." (Cal. Gov. Code § 911.2(a).) "However, if

7   the injured party fails to [present] a timely claim, a written application may be made to the public

8   entity for leave to present [a late] claim." Coble v. Ventura Cnty. Health Care Agency, 73 Cal.

9   App. 5th 417, 421 (2021) (citing Cal. Gov. Code, § 911.4(a)). Such application must be

10  presented to the public entity no later than one year after the accrual of the cause of action. Cal.

11  Gov. Code § 911.4(b). "If the public entity denies the application [for leave to present a late

12  claim], Government Code section 946.6 authorizes the injured party to petition the court for

13  relief from the claim requirements." Coble, 73 Cal. App. 5th at 421 (internal quotations and

14  citations omitted). However, "[t]he vast majority of district courts in this state have interpreted §

15  946.6 as vesting the California superior courts, not federal courts, with the sole jurisdiction over

16  petitions for relief from the requirements of § 945.4." Rubio v. City of Visalia, No. 1:21-CV-

17  00286 DAD SAB, 2021 WL 3033480, at *2 (E.D. Cal. July 19, 2021).

18      Here, Plaintiff alleges in his complaint that he filed a claim against the City on or around

19  July 28, 2020, six months and six days after the date of incident. (ECF ¶ 23.) On August 5,

20  2020, the City sent Plaintiff a letter that stated his claim was being returned because it was not

21  presented within six months as required by § 911.2. (Id.) The letter advised that Plaintiff's only

22  recourse was to apply to the City for leave to present a late claim. (Id.) Believing the claim was

23  untimely, counsel for Plaintiff served an application for leave to present a late government claim

24  pursuant to §911.4 on August 14, 2020. (Id.) The complaint filed in this action on March 1,

25  2021 alleges that at the time of filing, the City had failed to respond to Plaintiff's application for

26  leave to present a late claim, but asserted multiple reasons why Plaintiff satisfies the

27

28

requirements to present an application for leave to present a late claim.  (Id.)[8]  On March 3, 2021, Plaintiff filed a motion in this court for relief from the government claims presentation requirements pursuant to section 946.6.  (ECF No. 7.)  On July 19, 2021, then-assigned District Judge Drozd denied the application because § 946.6 expressly states a superior court is the proper court to hear such motions.  (ECF No. 20.)

After the complaint was filed and subsequent to Judge Drozd's July 19, 2021 order, Plaintiff discovered Executive Order N-35-20, issued by Governor Newsom on March 21, 2020.  (Opp'n 16.)  Executive Order N-35-20 provides that, because of the COVID-19 pandemic, "[t]he time for presenting a claim pursuant to Government Code section 911, et seq., is hereby extended by 60 days." (DeSimone Decl. Ex 4 at 5.)[9]

Defendants' instant motion requests dismissal of Plaintiff's six state law claims because they are barred for failure to satisfy pre-litigation claims requirements.  In his opposition, Plaintiff argues he timely presented his claim because he filed six months and six days after the incident, which is sufficient given the Executive Order's 60-day extension.  However, Plaintiff's complaint plainly alleges his claim was untimely.  Because the timely filing of a claim is an "element[] of the plaintiff's cause of action and condition[] precedent to the maintenance of the action," Plaintiff must plead facts demonstrating his alleged compliance with the claim presentation requirement in his complaint or be subject to dismissal.  State of California v. Superior Ct., 32 Cal. 4th at 1240.

Accordingly, the Court must grant Defendants' motion for judgment on the pleadings because, according to his complaint, Plaintiff's claim to the City was untimely under Government Code 911.2, and Plaintiff makes no allegation that he has obtained relief from

---

[8] The Court notes that in Defendants' opposition to Plaintiff's motion for relief from government claims presentation requirements, Defendants argued Plaintiff's application for leave to present a late claim was denied on October 1, 2020.  (ECF No. 18.)  However, Plaintiff alleges in his complaint that as of March 1, 2021, the City had failed to respond to Plaintiff's application.  (Compl. ¶ 23.)

[9] The Court takes judicial notice that, on June 30, 2020, the Governor extended the time to present a claim pursuant to Government Code §911, et seq., by an additional 60 days pursuant to Executive Order N-71-20.  See Coble, 73 Cal. App. 5th at 422 (citing Governor's Exec. Order No. N-71-20 (June 30, 2020) p. 2, ¶ 6 ["The timeframes set forth in Executive Order N-35-20, Paragraph 11, are extended by an additional 60 days"]).  The Court also takes judicial notice that Executive Order N-08-21, the cumulative 120-day extension applies to claims that accrued before June 30, 2021.  See id. (citing Governor's Exec. Order No. N-08-21 (June 11, 2021) p. 3, ¶ 7e ["Claims accruing before June 30, 2021 will remain subject to the 120-day extension"].))

1  presenting a late claim.  However, as discussed more fully below, the Court finds good cause to

2  grant Plaintiff leave to amend.  In doing so, the Court does not address the merits of whether,

3  with the Executive Order, Plaintiff's claim was timely filed under Government Code §§ 911.2 or

4  945.6; whether the issue of timely filing a claim must be determined in a claim-relief proceeding;

5  or whether a state or federal court is the appropriate court to determine the issue of timeliness.

6          **D.      Leave to Amend**

7          Plaintiff requests leave to amend his complaint as to his federal § 1983 claims and to

8  allege he timely filed his state law claims in accordance with the claim presentation

9  requirements.  The Federal Rules of Civil Procedure state that leave to amend "shall be freely

10  given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "The decision of whether to grant

11  leave to amend nevertheless remains within the discretion of the district court, which may deny

12  leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant,

13  repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

14  opposing party by virtue of allowance of the amendment, [and] futility of amendment.' "

15  Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (quoting Forman v.

16  Davis, 83 S. Ct. 227, 230 (1962)).  "[I]t is the consideration of prejudice to the opposing party

17  that carries the greatest weight."  Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th

18  Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining [] factors, there exists

19  a presumption under Rule 15(a) in favor of granting leave to amend."  Id.

20          1.      Plaintiff's Request for Leave to Amend His Federal Claims

21          At the hearing held in this matter—four years after the incident, three years after filing

22  the complaint, after the close of discovery and the pleadings, months after Plaintiff entered his

23  plea in State Court, and after full briefing on Defendants' motion for judgment on the

24  pleadings—Plaintiff requested leave to amend his federal causes of action should the Court grant

25  Defendants' motion.  The Court denies Plaintiff's request for leave to amend.

26          Counsel for Plaintiff reasoned at the hearing that amendment was necessary because the

27  complaint was filed before Plaintiff had the police report and before Plaintiff pleaded no contest

28  to violation of Penal Code § 69.  First, the Court is not persuaded that Plaintiff did not have the

1   benefit of the police report when he filed his complaint because Plaintiff cited *both* Officer

2   Hanson and Officer Burkdoll's police reports in his complaint.  (Compl. ¶ 29 ("According to the

3   police reports from Officer Burkdoll and Officer Hansen, the interaction between the officers and

4   Mr. Rubio occurred on or about January 22, 2020 at or around 8:08 PM").)  Plaintiff's own

5   complaint establishes that he possessed or knew of the existence of both Officer Burkdoll and

6   Officer Hansen's police reports and the facts contained therein when he filed his complaint

7   nearly three years ago on March 1, 2021.  See AmerisourceBergen Corp v. Dialysist West, Inc.,

8   465 F.3d 946, 953 (9th Cir. 2006) (citing Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 799 (9th Cir.

9   1991) ("We have held that an eight-month delay between the time of obtaining a relevant fact

10  and seeking a leave to amend is unreasonable")).

11       Plaintiff also requests leave to amend his federal claims following his plea of no contest

12  to Penal Code § 69 on October 26, 2023.  As an initial matter, the Court's record reflects that

13  counsel for Plaintiff became aware of Plaintiff's conviction on or around October 30, 2023.

14  (ECF No. 65 at 6.)  Between October 30, 2023 and when the instant motion was filed on

15  December 29, 2023, Plaintiff did not move for leave to amend his complaint.  Indeed, Plaintiff

16  did not request leave to amend his federal claims until oral argument in this matter on February

17  14, 2024.  Counsel for Plaintiff requested leave to amend to allege a new factual basis following

18  Plaintiff's no contest plea.  Importantly, however, when asked by the Court at the hearing to

19  proffer what new factual basis Plaintiff intended to plead, Plaintiff's counsel could not articulate

20  any different allegations following the guilty plea.  Rather, as noted at the hearing, Plaintiff

21  wants to bring a new theory of the case based upon his plea of no contest.  However, "late

22  amendments to assert new theories are not reviewed favorably when the facts and the theory

23  have been known to the party seeking amendment since the inception of the cause of action."

24  Acri v. International Ass'n of Machinists, 781 F.2d 1393, 1398 (9th Cir. 1986).

25       The factual basis of Plaintiff's plea was the very police report that Plaintiff has had since

26  at least March 1, 2021 when he filed this action.  Discovery is closed and the deadline to make

27  dispositive motions has passed.  It would be highly prejudicial to Defendants to allow Plaintiff to

28  amend his complaint to allege a new theory of his case at this late stage.  The Court therefore

1    denies Plaintiff's request for leave to amend his federal causes of action.

2        2.    Plaintiff's Request for Leave to Amend his State Law Claims

3        The Court finds good cause to grant Plaintiff's request for leave to amend his

4    administrative remedies allegations for his state law claims.  In his briefing, counsel for Plaintiff

5    argues that they informed counsel for Defendants of Plaintiff's oversight regarding executive

6    order N-35-20 on December 17, 2021.  (Opp'n 16.)  Defendants do not dispute this.  However, in

7    the hearing held in this matter, counsel for Plaintiff informed the Court that they actually

8    discovered the Executive Order shortly after Judge Drozd issued his order denying Plaintiff's

9    motion for relief on July 19, 2021.  The Court admonishes Plaintiff for failing to timely request

10   leave to amend to correct an element of Plaintiff's state law claims despite knowing of the

11   deficiency for two and a half years.

12       "Undue delay by itself, however, is insufficient to justify denying a motion to amend."

13   Bowles v. Reade, 198 F.3d 752, 758 (9th Cir. 1999) (citation omitted).  Here, unlike allowing

14   leave to amend to plead alternative § 1983 theories to avoid the Heck bar, the Court finds

15   granting leave to amend would not prejudice Defendants because Defendants had been on notice

16   of Executive Order N-35-20 since approximately December 2021.  Accordingly, Defendants

17   knew of Plaintiff's position that he believes he timely presented his state law claims.  (Opp'n

18   16.)  The Court cannot at this time foresee any reason to re-open discovery as a result of

19   Plaintiff's amendment to his administrative remedies allegations.  Thus, while Plaintiff

20   undoubtedly engaged in undue delay by failing to request leave to amend for two and a half

21   years, the Court does not find he acted in bad faith or with dilatory motive.  Further, as discussed

22   above, the Court finds Plaintiff's amendment to his administrative remedies would not be futile.

23       Because Plaintiff elected to wait to address this issue before the Court until the instant

24   motion, the Court shall vacate the March 1, 2024 pretrial conference and the April 16, 2024 trial

25   date, and set an expedited schedule to allow Plaintiff to amend his complaint—limited *only* to

26   Plaintiff's administrative remedies allegations related to his state law claims—and allow

27   Defendants an opportunity to file a responsive pleading or motion.  Requests for extensions of

28   time will be strongly disfavored and only granted upon a showing of good cause.  The Court will

set a scheduling conference to be held soon after the amendment period to re-set the pretrial conference and trial dates.

## V.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for judgment on the pleadings as to his first cause of action is GRANTED with prejudice;

2. Defendants' motion for judgment on the pleadings as to Plaintiff's second and third causes of action is GRANTED in part and DENIED in part without leave to amend;

3. Defendants' motion for judgment on the pleadings as to Plaintiff's fourth through ninth causes of action is GRANTED with leave to amend;

4. Plaintiff may file a first amended complaint within seven (7) days of entry of this order subject to the above limitations;

5. Defendants may file a responsive pleading or motion to the first amended complaint within twenty-one (21) days of its filing; and

6. The pretrial conference currently set for March 1, 2024 at 9:30 a.m. in Courtroom 9 and the jury trial set for April 16, 2024 at 8:30 a.m. in Courtroom 9 is VACATED.  If no amended complaint is filed, the Court will immediately set a trial setting conference to set the matter for trial in short order.

IT IS SO ORDERED.

Dated:   **March 1, 2024**   

UNITED STATES MAGISTRATE JUDGE

29